# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN CHRISTOPHER PLUNKETT, | ) | |
| ID# 36265-177, | ) | |
| Movant, | ) | |
| | ) | No. 3:20-CV-640-L-BH |
| vs. | ) | No. 3:14-CR-239-L(1) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the *Final Amended Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on May 18, 2020 (doc. 31), should be **DENIED** with prejudice. The *Motion for Bond Pending Ruling on § 2255 Motion*, received on September 7, 2022 (doc. 111), is **DENIED**.

## I.    BACKGROUND

Stephen Christopher Plunkett (Movant) challenges his federal conviction and sentence in Cause No. 3:14-CR-239-L(1). The respondent is the United States of America (Government).

## A.    Conviction and Sentencing

After first being charged by complaint, Movant was charged by indictment on June 18, 2014, with two counts of bank robbery in violation of 18 U.S.C. § 2113(a) (Count One and Count Two). (*See* docs. 1, 5.)[2] He pled guilty to both counts of the indictment on January 14, 2016. (*See* doc 30.) In support of his guilty plea, he signed and submitted a plea document entitled, *Elements*

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:14-CR-239-L(1).

*and Punishment of the Offenses and Factual Resume*, which set forth the elements of both counts, the minimum and maximum penalties he faced on those counts, and stipulated facts showing that he committed the charged offenses, as well as an uncharged bank robbery committed on April 9, 2014, in Cummings, Georgia (Georgia Bank Robbery).  (*See* doc. 28.)

The plea document stated that Movant understood that the Government was not willing to allow him to plead to any fewer or other charges than Counts One and Two, or to a specific sentence range under Federal Rule of Criminal Procedure 11(c)(1)(C).  (*See id.* at 1, n.1.)[3]  He understood and waived his rights to plead not guilty, to have a speedy trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate himself.  (*See id.* at 4-5.)  He agreed that he understood the nature and elements of the offenses to which he was pleading guilty, and that the stipulated facts he provided regarding Counts One and Two and the Georgia Bank Robbery were true and would be submitted as evidence.  (*See id.* at 5-7.)  The plea document also stated that Movant had discussed the federal sentencing guidelines, how they might apply to his case, and the potential guideline range with counsel, and that he understood "that the conversations were about potential punishments and not a guarantee of what the punishment [would] be."  (*Id.* at 7 & n.10.)  He understood his sentence would be imposed solely by the Court after hearing all the evidence and arguments in the case.  (*See id.* at n.10.)  He understood that the Court could order his punishments on Counts One and Two to run consecutively, resulting in a maximum sentence of imprisonment of 40 years for both counts.  (*See id.* at 3.)  He had reviewed his constitutional rights, the facts of his case, the elements and penalties of the offenses, the sentencing guidelines, and the

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

sentencing factors under 18 U.S.C. § 3553(a) with counsel, and he conceded that he was guilty of both counts of the indictment and had concluded that it was in his best interests to plead guilty. (*See id.* at 7.)  Movant retained all of his rights to appeal.  (*See id.*)

At the re-arraignment on January 14, 2016, the Court noted on multiple occasions that no plea agreement between the parties had been filed.  (*See* doc. 94 at 3, 6, 11.)  Movant acknowledged under oath that he had reviewed his plea document thoroughly with counsel, fully understood and agreed to it, and agreed with each of the essential elements of the offenses and the stipulated facts set forth in it.  (*See* doc. 94 at 13-15.)  He also acknowledged that he understood the rights he was giving up by pleading guilty.  (*See id.* at 8-10.)  He affirmed his understanding that the Court alone would decide his sentence after consideration of a presentence investigation report (PSR) which would include a guideline calculation range of imprisonment that was not binding on the Court. (*See id.* at 11-12.)  Movant acknowledged that no one had made him any promise, in writing or orally, that had induced or encouraged him to plead guilty, and that no one pressured, threatened, or intimidated him into pleading guilty.  (*See id.* at 7-8.)  He acknowledged that by pleading guilty, he was subjecting himself to a maximum term of 20 years' imprisonment on each count, for a potential aggregate term of up to 40 years' imprisonment, as well as fines and other penalties.  (*See* doc. 94 at 10-12.)  Movant pled guilty to Counts One and Two, and the Court found that his guilty plea on both counts was knowing and voluntary.  (*See id.* at 13, 16.)

On March 24, 2016, the United States Probation Office (USPO) prepared a PSR in which it applied the 2015 United States Sentencing Guidelines Manual.  (*See* doc. 32-1 at ¶ 26.)  The PSR stated that although there was no plea agreement between the parties, the Government had advised that Movant stipulated to the Georgia Bank Robbery as part of an oral agreement between the parties, and it determined that the Georgia Bank Robbery would be treated as if Movant had

been convicted of an additional bank robbery count for purposes of sentencing under U.S.S.G. § 1B1.2(c). (*Id.* at ¶ 27.) The PSR grouped Count Ones and Two and the Georgia Bank Robbery into three distinct "Groups of Closely Related Counts" under U.S.S.G. § 3D1.4. (*Id.* at ¶ 28.)

Applying U.S.S.G. § 2B3.1, the applicable guideline for offenses under 18 U.S.C. § 2113(a), the PSR calculated the base offense level for Count One at 20. (*See id.* at ¶ 29.) Two levels were added for the object of the offense, and six levels were added for otherwise using a firearm, resulting in an adjusted offense level of 28. (*See id.* at ¶¶ 30-31, 35.) The base offense level for Count Two was calculated at 20; two levels were added for the object of the offense, and four levels were added for otherwise using a dangerous weapon, resulting in an adjusted offense level of 26. (*See id.* at ¶¶ 36-38, 42.) The base offense level for the Georgia Bank Robbery was calculated at 20; two levels were added for the object of the offense, and four levels were added for otherwise using a dangerous weapon, resulting in an adjusted offense level of 26. (*See id.* at ¶¶ 43-45, 49.) Adjusting for multiple counts, three levels were added to the greater adjusted offense level of 28 assigned to Count One, and three levels were deducted for acceptance of responsibility, resulting in a total offense level of 28. (*See id.* at ¶¶ 50-57.) Based on an offense level of 28 and a criminal history category of III, the guideline imprisonment range was 97 to 121 months. (*See id.* at ¶ 108.) The PSR noted that because the Georgia Bank Robbery was relevant conduct to the charged offenses, Movant's sentence for the charged offenses had to be adjusted for any period of imprisonment already served on the undischarged term of imprisonment for the Georgia Bank Robbery, and had to be imposed to run concurrently with its remainder. (*See id.* at ¶ 109.)

On April 6, 2016, the Government objected to the PSR, arguing that the Georgia Bank Robbery should not be counted in Movant's offense level or taken into account at sentencing for

the charged offenses. (*See* doc. 33.) On June 6, 2016, the USPO issued an addendum to the PSR addressing the Government's objection and correcting errors contained in the PSR, but which supported the PSR as written. (*See* doc. 36-1 at 1.) The addendum also corrected the USPO's misinterpretation of information relating to the Georgia Bank Robbery. (*See id.* at 1.) The addendum clarified that the Government and Movant did not make an oral agreement regarding the Georgia Bank Robbery, and that Movant stipulated to the offense in his factual resume. (*See id.* at 1-2.) It also noted that the stipulated facts regarding the Georgia Bank Robbery could result in an increased gross offense level. (*See id.* at 2.)

Upon further review of the Government's objection to the PSR, the USPO issued a second addendum on June 27, 2016, accepting the objection. (*See* doc. 37-1 at 1.) Accordingly, the Georgia Bank Robbery was removed from the offense level calculation, resulting in two groups of closely related counts consisting of Counts One and Two under the guidelines. (*See id.* at ¶¶ 14, 26, 43-49.) Adjusting for multiple counts, two levels were added to the greater adjusted offense level of 28 assigned to Count One, and three levels were deducted for acceptance of responsibility, resulting in a total offense level of 27. (*See id.* at ¶¶ 50-57.) The addendum added three points to Movant's criminal history score based on his state convictions for the Georgia State Robbery, resulting in a criminal history category of IV. (*See id.* at ¶ 66.) Based on an offense level of 27 and a criminal history category of IV, Movant's new guideline imprisonment range became 100 to 125 months. (*See id.* at ¶ 108.) Because the state charges for the Georgia Bank Robbery were not related to the charged offenses in the underlying criminal case, the addendum noted that his federal sentences could be imposed to run concurrently, partially concurrently, or consecutively to his undischarged terms of imprisonment. (*See id.* at ¶ 109.)

On January 25, 2017, Movant filed objections to the original PSR. (*See* doc. 46.) In addition to making factual corrections and objecting on grounds that did not affect the guideline calculations, Movant objected to the six-level enhancement for otherwise using a firearm as to Count One and to the four-level enhancements for otherwise using a dangerous weapon as to Count Two and the Georgia Bank Robbery. (*See id.* at 1-3.) He also agreed that he robbed a Chase Bank in Dallas, Texas on March 24, 2014 (Dallas Bank Robbery), and that this bank robbery should be included in the PSR as relevant conduct based on an offer from the Government that it would not supersede the indictment to separately charge it if Movant agreed to include it as relevant conduct. (*See id.* at 3.) Movant also requested that his sentence be served concurrently with ones for the Georgia Bank Robbery, which he claimed he had been serving since April 15, 2014, when he was arrested in Georgia, not June 3, 2015. (*See id.* at 5.)

The USPO issued a third addendum to the PSR on March 17, 2017, in which it addressed Movant's objections. (*See* doc. 51-1.) The addendum supported the PSR as written on the six-level enhancement for otherwise using a firearm, and the four-level enhancements for otherwise using a dangerous weapon. (*See id.* at 2-3.) It accepted the objection that Movant had begun serving his state sentences for the Georgia Bank Robbery on April 15, 2014. (*See id.* at 4, ¶ 109.) It also accepted Movant's stipulation that the uncharged Dallas Bank Robbery should be considered relevant conduct for purposes of sentencing. (*See id.* at 5.) The Dallas Bank Robbery was included in the offense level calculation in a third group of closely related counts, and an adjusted offense level was calculated at 26. (*See id.* at ¶¶ 43-49.) Adjusting for multiple counts, two levels were added to the greater adjusted offense level of 28 assigned to Count One, and three levels were deducted for acceptance of responsibility, resulting in a total offense level of 28. (*See*

*id.* at ¶¶ 50-57.)  Based on an offense level of 28 and a criminal history category of IV, the new guideline imprisonment range became 110 to 137 months.  (*See id.* at ¶ 108.)

In April 2017, Movant filed a *pro se* motion to dismiss counsel and counsel moved to withdraw.  (*See* docs. 53, 55.)  Following a hearing at which Movant explained that he wished to withdraw his request for dismissal of counsel, counsel's motion was denied, and Movant's *pro se* motion was terminated as withdrawn.  (*See* doc. 61.)  On May 31, 2017, and June 5, 2017, Movant again moved for withdrawal of counsel.  (*See* docs. 63, 67.)  After a hearing, Movant's request was granted, and new counsel was appointed.  (*See* docs. 70-71.)  Through new counsel, Movant filed objections to the PSR on September 22, 2017, in which he reasserted his prior challenges to the firearm and dangerous weapon enhancements.  (*See* doc. 77.)  In a fourth addendum to the PSR, the USPO noted that Movant's objections had previously been addressed in the third addendum.  (*See* doc. 78-1.)

At the sentencing hearing on December 11, 2017, the Court heard arguments on Movant's objections to the PSR's firearm and dangerous weapon enhancements, and on his requests for a downward departure and a downward variance.  (*See* doc. 100 at 10-27, 40-45, 47-88, 92.)  It overruled Movant's objections and denied any downward departure or downward variance.  (*See id.* at 27-34, 45-46, 94-95.)  It also determined that any agreement that Movant's federal sentence should run concurrently with his sentences for the Georgia Bank Robbery was not supported by the record, concluded that Movant's federal sentence should run consecutively to the sentences for the Georgia Bank Robbery because it did not constitute relevant conduct to the charged offenses, and declined to give credit for time served by Movant from the time of his arrest in April 2014. (*See id.* at 93, 97.)  The Court adopted the findings and conclusions of the PSR and its addenda as its findings and conclusions, except as modified or rejected at the sentencing hearing.  (*See* doc.

87 at 4.)  By judgment dated December 12, 2017, Movant was sentenced to concurrent terms of 114 months' imprisonment on Counts One and Two, to run consecutively to his sentences for the Georgia Bank Robbery and to any sentences imposed in two pending state cases in Texas and Georgia, respectively.  (*See* doc. 86 at 1-2.)  His term of imprisonment was to be followed by a three-year term of supervised release.  (*See id.* at 3.)

On appeal, Movant challenged the six-level firearm enhancement under § 2B3.1(b)(2) as to Count One.  *See United States v. Plunkett*, 749 F. App'x 306, 307 (5th Cir. 2019).  The Fifth Circuit affirmed the judgment on January 30, 2019.  *See id.*  Movant did not file a petition for a writ of certiorari with the Supreme Court.

**B.**   <u>**Substantive Claims**</u>

Movant's final amended § 2255 motion[4] asserts the following grounds for relief:

(1) 4TH Amdmt [sic]/ FRCP Rule 5 violation/ IAC;

(2) Biased/impartial judges/ IAC;

(3) Right to counsel/ IAC;

(4) Breach of plea agreement/ plea involuntary/ IAC;

(5) Statutory and constitutional speedy trial violations/ IAC;

(6) IAC advice to plead guilty;

(7) Misapplication of 4A1.2/ IAC;

(8) Misapplication of improper impeachment factor/ IAC;

---

[4] Movant's original § 2255 motion was received on March 10, 2020.  (*See* No. 3:20-CV-640-L-BH, doc. 2.)  He subsequently filed several separate attachments or supplements to his motion without seeking leave, and moved for leave to further amend the § 2255 motion.  (*See id.*, docs. 9-10, 12, 14.)  On April 8, 2020, his motion for leave to amend was granted, and to avoid piecemeal consideration of his various filings and amendments setting forth grounds for relief, he was ordered to file a final amended § 2255 motion setting forth all of the claims that he sought to pursue in one filing, regardless of whether he had previously asserted the claims or was raising new claims for relief.  (*See id.*, doc. 15.)  After the April 8, 2020 order, Movant filed additional motions for leave to amend the § 2255 motion that were denied as moot because he had been granted leave to file a final amended § 2255 motion.  (*See id.*, docs. 16, 19, 24-25.)  Movant's final amended § 2255 motion was received on May 18, 2020.  (*See id.*, doc. 31.)

(9) Misapplication of 1B1.2(c) and 1B1.3/ IAC;

(10)    Miscalculation of guidelines range/ IAC;

(11)    Misapplication of 5G1.3/ IAC;

(12)    Misapplication of 1B1.3/ IAC;

(13)    Abuse of discretion/error/ IAC;

(14)    IAC - prejudicial statements;

(15)    Unreasonable sentence/ improper application of factors/ IAC;

(16)    IAC - misadvice [sic] in rejecting plea/sentence offer.

(No. 3:20-CV-640-L-BH, doc. 31 at 7-8.)5  The Government filed a response on October 7, 2020.

(*See id.*, doc. 69.)  Movant filed a reply on November 2, 2020.  (*See id.*, doc. 77.)

## II.    SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and

for a narrow range of injuries that could not have been raised on direct appeal and would, if

condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589

(5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a

collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231

(5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising

the claim on collateral review.   *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

Defendants may only collaterally attack their convictions on grounds of error omitted from their

direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the

error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an

---

5 Because resolution of some grounds for relief may impact some of the remaining claims, they are considered in an
order different than presented by Movant.

ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.    BREACH OF PLEA AGREEMENT

In his fourth ground, Movant contends that there was a "Breach of Plea Agreement." (No. 3:20-CV-640-L-BH, doc. 32 at 11; *see also id.*, doc. 31 at 7.) He argues that "both [Movant] and the Government took actions that neither was required to take, evincing an agreement," and that "the Government breached the most significant aspect of the agreement[,]" apparently in reference to the application of § 1B1.2 in determining his guidelines sentence. (*Id.*, doc. 32 at 12-13.) The Government contends that this claim is procedurally barred because Movant failed to raise it on direct appeal, and that it is without merit. (*See id.*, doc. 69 at 23-25.)

When considering an alleged breach of a plea agreement, the Court applies general principles of contract law and considers "'whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement.'" *United States v. Lewis,* 476 F.3d 369, 387-88 (5th Cir. 2007) (quoting *United States v. Valencia,* 985 F.2d 758, 761 (5th Cir. 1993)). The movant bears the burden of demonstrating a breach of the agreement by a preponderance of the evidence. *Id.* at 387.

Here, the record shows that Movant's plea document expressly stated that the contents of the plea document were stipulated and agreed to by Movant and his counsel; no other party to the plea document was identified, and the Government did not sign the plea document. (*See* doc. 28 at 1, 8.) At Movant's re-arraignment, trial counsel affirmed that there was no plea agreement, and

10

when the Court directly stated its understanding to Movant that there was no plea agreement in the case and asked whether there were any promises made to him, in writing or orally, that encouraged him to plead guilty, Movant responded that there were not. (*See* doc. 94 at 3, 6-7.)  Further, the PSR acknowledged that there was no plea agreement in the case, and that the Government did not sign Movant's plea document.  (*See* doc. 32-1 at ¶ 27.)   Although the PSR initially indicated that an oral agreement existed between the parties as to the Georgia Bank Robbery, it subsequently corrected the statement in an addendum to the PSR, which stated that there was no such agreement.[6]  (*See id.*; doc. 36-1 at 1-2.)  Also, at sentencing, the Court determined that the record did not support the existence of an agreement by the parties as to how the federal sentence should be imposed in relation to Movant's Georgia Bank Robbery sentences. (*See* doc. 100 at 93.)

Even assuming that the claim is not procedurally barred, the record shows that there was no plea agreement between the Government and Movant.  His claim that the Government breached a plea agreement is unsupported by the record and without merit.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). Movant is not entitled to relief on this claim, and it should be denied.

---

[6] To the extent Movant argues that he understood his plea document to be an agreement between him and the Government about the application of § 1B1.2(c) to his federal sentence, he has not shown that his understanding was reasonable given the plain language of the plea document, which did not contain any agreement with the Government under that provision, and which stated that Movant understood that his discussions with counsel about how the sentencing guidelines might apply in his case were about potential punishments, and not a guarantee of any specific punishment and the representations at the re-arraignment.  (*See* No. 3:20-CV-640-L-BH, doc. 32 at 11.)  Movant has also failed to show that his decision to exercise his right to plead guilty, to stipulate to facts supporting his guilty plea as required for the Court to accept a guilty plea, and to provide the Government with alleged information about another bank robber in an effort to mitigate his own punishment, imposed any contractual obligation on, or amounted to an implicit agreement by, the Government under either Movant's plea document or § 1B1.2(c).  *See* Fed. R. Crim. P. 11.

#### IV.     INVOLUNTARINESS OF PLEA

In his fourth ground, Movant contends, in the alternative to his claim for breach of plea agreement, that his "plea was not knowing and voluntary." (No. 3:20-CV-640-L-BH, doc. 32 at 11; *see also id.*, doc. 77 at 6, 8.) He claims that "[c]oupled with the credit for time served issue under § 5G1.3(b), the application of § 1B1.2(c), and thus, concurrent vs. consecutive sentences were the determinative issues which caused Movant to agree to a guilty plea based upon the advice of counsel." (*Id.*, doc. 77 at 7.)   The Government argues that the claim is procedurally barred, fatally conclusory, and meritless. (*See id.*, doc. 69 at 23 n.12.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks omitted). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292

F.3d 414, 417 (5th Cir. 2002).  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Here, Movant's claim that he pleaded guilty because of his alleged understanding of how the sentencing guidelines would apply in his case, based on representations by counsel and an agreement with the Government, is refuted by the record.  As discussed, the record shows that there was no plea agreement between Movant and the Government.  Further, Movant was advised both through his plea document and by the Court in person that by pleading guilty, he was subjecting himself to a statutory maximum period of imprisonment of 20 years on each count, for an aggregate sentence of up to 40 years' imprisonment on the charged offenses.  (*See* doc. 28 at 3; doc. 94 at 10-12.)  He also stated in the plea document that he had thoroughly reviewed and discussed the federal sentencing guidelines, how they might apply to his case, and the potential guideline range with counsel, and that he understood those discussions were about potential punishments, and not a guarantee of what his punishment would be.  (*See* doc. 28 at 7 & n.10.) He swore in open court that no one had made him any promise, in writing or orally, that had induced or encouraged him to plead guilty, and that no one pressured, threatened, or intimidated him into pleading guilty.  (*See* doc. 94 at 7-8.)  He also affirmed in his plea document and at his re-arraignment that he understood his sentence would be imposed after the Court's consideration of the non-binding sentencing guidelines and § 3553 factors, and that the Court alone would

determine his sentence. (*See* doc. 28 at 3-4; doc. 94 at 11-12.) With this knowledge and understanding, Movant still persisted with his guilty plea on both counts.

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of verity given to his sworn statements in open court, and the great evidentiary weight accorded to court records. *See Blackledge*, 431 U.S. at 74. As discussed, his sworn statements of understanding and acknowledgement in open court and in the plea document that the Court alone would decide his sentence, the sentencing guidelines were advisory and not binding on the Court, discussions with counsel about the application of the guidelines were about potential and not guaranteed punishments, and no one made him a promise that induced him to plead guilty, contradict his claim that he pleaded guilty because he expected to receive concurrent sentences and credit for time served. Assuming for purposes of this motion only that the claim is not procedurally barred, Movant has not shown that his plea was involuntary. He is not entitled to relief on this ground, and his claim should be denied.

## V.    PRE-PLEA CLAIMS

In his first, third, and fifth grounds for relief, Movant contends that various statutory rights, constitutional rights, and federal rules of criminal procedure were violated from the time of his arrest by Georgia authorities on April 15, 2014, until he was removed to this district in June 2015. (*See* No. 3:20-CV-640-L-BH, doc. 31 at 7; *id.*, doc. 32 at 3, 8-11, 13-16.)  In his first ground, he alleges "4TH Amendment and/or Fed. R. Crim. P. Rule 5 violation related to the arrest of Movant on April 15, 2014 which was federal in character."[7] (*Id.*, doc. 32 at 8.)  In his third ground, he argues that he was denied the "6TH Amendment right to counsel at critical stages of the proceedings"; he claims that he "was arrested and detained by [Georgia state law enforcement] on the authority of a federal warrant," and "should have been afforded federal counsel at that time," or at the latest, when he was indicted in the underlying criminal case on June 18, 2014.  (*Id.*, doc. 32 at 10.)  In his fifth ground, he alleges speedy trial violations, including violations of 18 U.S.C. §§ 3161(b), (j).  (*See id.*, doc. 32 at 3, 13-16.)

The Fifth Circuit has held that because a guilty plea necessarily "admits all the elements of a formal criminal charge," it "waives all non-jurisdictional defects in the proceedings against a defendant." *Barrientos v. United States,* 668 F.2d 838, 842 (5th Cir. 1982); *see also Tollett v. Henderson,* 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").  As discussed, Movant's guilty plea on both counts was knowing and

---

[7] The Fourth Amendment prohibits unlawful searches and seizures.  *See* U.S. CONST. amend. IV.  Although Movant mentions a Fourth Amendment violation based on his April 15, 2014 arrest, he does not provide any facts or arguments challenging an alleged unlawful search and seizure.  (*See* No. 3:20-CV-640-L-BH, doc. 31 at 7; *id.*, doc. 32 at 8.)  To the extent he contends that his Fourth Amendment rights were violated, his claim is without merit, and it should be denied.

voluntary, so he waived all of his non-jurisdictional claims unrelated to the guilty plea in his first, third, and fifth grounds for relief. *See, e.g.*, *Henderson*, 411 U.S. at 267; *United States v. Bell,* 966 F.2d 914, 915 (5th Cir.1992) (citing *United States v. Broussard,* 645 F.2d 504, 505 (5th Cir.1981)). Because Movant's guilty pleas waived the pre-plea claims alleged in his first, third, and fifth grounds, he is not entitled to § 2255 relief on these claims.

Notwithstanding the waiver, Movant has also failed to show that he is entitled to § 2255 relief on the merits of any of his pre-plea claims. Each of his claims is premised on his argument that he was arrested by Georgia state authorities on April 15, 2014, on the initial sealed federal arrest warrant filed in the underlying criminal case on the same day, and that this alleged federal arrest rendered him "in the primary custody of federal authorities" and entitled him to "the full panoply of right [sic] attached thereto." (No. 3:20-CV-640-L-BH, doc. 32 at 9.)

The record shows that a sealed complaint and sealed arrest warrant were filed in the underlying criminal case on April 15, 2014, and no return on the arrest warrant was filed. (*See* docs. 1-3.) Movant's own filings show that the State of Georgia had issued two arrest warrants for him the previous day, on April 14, 2014, charging him with felony attempted and armed robbery of a bank in Forsyth County, Georgia, and felony aggravated assault, both on April 9, 2014. (*See* No. 3:20-CV-640-L-BH, doc. 87 at 2-3.) The state arrest warrants were executed by a state law enforcement officer whose signature was dated April 16, 2014.[8] (*See id.*) The State of Georgia charged, prosecuted, and convicted Movant on multiple state offenses based on the events of the April 9, 2014, in the Georgia Bank Robbery case. *State v. Plunkett*, No. 14CR-0343-3 (Ga. Sup. Ct. Div. 3, Forsyth County, Ga. May 5, 2015. While Movant's state proceedings were

---

[8] Also on April 16, 2014, Movant appeared before a Georgia state judge on a state warrant, and he signed a waiver of extradition proceedings to Texas. (*See* No. 3:20-CV-640-L-BH, doc. 2 at 38.) Although Movant contends that this appearance was made on the federal arrest warrant, the records provided by him plainly show that the appearance was on another warrant number. (*See id.*)

ongoing, a second sealed federal arrest warrant was issued on January 7, 2015, in the underlying criminal case. (*See* doc. 10.) A federal arrest under Rule 5 of the Federal Rules of Civil Procedure occurred in Georgia on July 23, 2015, and Movant made his Rule 5 initial appearance before a United States Magistrate Judge in the Middle District of Georgia on June 24, 2015, during which he waived his right to counsel and was ordered removed to the Northern District of Texas. (*See* doc. 12.) His initial appearance and arraignment in this district occurred on July 7, 2015, and he was appointed counsel at that time. (*See* docs. 14, 16-17.)

Because the record shows that Movant's federal arrest on the charged offenses occurred on June 23, 2015, after he had been charged by indictment in the underlying federal case, and that his Rule 5 initial appearance took place the next day, he cannot show a violation of § 3161(b) or Rule 5.[9] Even if, as Movant alleges, he was arrested by state authorities on April 15, 2014, in connection with the federal charges in the underlying criminal case, his claims still fail because "all of the time spent in state custody because of state proceedings" is excludable from the time-period within which an indictment must be filed under § 3161(b), and because the "period to determine a delay [under Rule 5] begins once state authorities relinquish custody to federal agents and at the time the federal agents make their arrest on federal charges."[10]  *United States v. Bigler*, 810 F.2d 1317,

---

[9] Section 3161(b) provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Rule 5 of the Federal Rules of Criminal Procedure sets forth the procedures and requirements for an initial appearance. Fed. R. Crim. P. 5.

[10] Movant repeatedly contends that he was "subjected to a federal arrest on April 15, 2014," when he was arrested by Georgia state authorities, relying on conclusory and self-serving *post hoc* allegations, conjecture, and speculative interpretations of selected records from the underlying criminal case and from his Georgia criminal proceedings, none of which are sufficient to demonstrate entitlement to § 2255 relief. He also claims that, by virtue of his alleged federal arrest on April 15, 2014, he was in "the primary custody of federal authorities." (No. 3:20-CV-640-L-BH, doc. 32 at 9.) The record and Movant's own filings show that he was arrested by Georgia state authorities and held in the custody of the State of Georgia, however, until his transfer to this district in June 2015, and he provides no facts or evidence to the contrary. (*See id.*)

Under the "'primary custody' doctrine, . . . primary custody is acquired by the first sovereign that arrests an individual." *Vasco v. Withers*, No. 3:20-cv-794, 2022 WL 3442567, at *2 (S.D. Miss. June 1, 2022). The Fifth Circuit

1320 (5th Cir. 1987); *United States v. Borden*, No. 1:11cv388WJG, 2012 WL 4898208, at *3 (S.D. Miss. Oct. 15, 2012) (citing *Barnett v. United States*, 384 F.2d 848, 857 (5th Cir. 1967)); *see also* 18 U.S.C. § 3161(h)(1)(B).  His claim under § 3161(j) is also unavailing because "the remedies of conviction reversal, new trial, or dismissal of the indictment are not available for violations of section 3161(j)", so he fails to show that relief under § 2255 would be warranted for a violation of this provision.  *United States v. Smith*, 997 F.2d 881, 1993 WL 261127, at *5 (5th Cir. 1993). Finally, his claim that he was denied counsel at a "critical stage" of the proceedings fails because he has not shown the existence of any "critical stage" of the proceedings in the underlying criminal case for which he was entitled to and did not have counsel present.[11]  *See United States v. Portillo*, 969 F.3d 144, 161 (5th Cir. 2020) (quoting *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 211 (2008)) (discussing how to determine whether a proceeding is a "critical stage" for purposes of the Sixth

---

[11] has declined to decide whether "there are 'limited circumstances' in which an individual held by state authorities may be deemed to be in federal custody" for purposes of speedy trial violations.  *United States v. Green*, 508 F.3d 195, 202 (5th Cir. 2007) (discussing out-of-circuit authority which "addressed the question of whether an individual being held by state authorities can ever be under 'federal arrest' or in 'federal custody' and stated that, 'in limited circumstances,' one can be.").  Even if the Fifth Circuit recognized the existence of such limited circumstances, Movant would have to show that "the Government [knew or should have known] that [he] is held by state authorities solely to answer federal charges."  *Id.* at 201.  Because the record establishes that Movant was arrested, indicted, prosecuted, and convicted of state offenses by the State of Georgia for the Georgia Bank Robbery, any claim that he was held in the custody of the State of Georgia "solely to answer federal charges" is refuted by the record and without merit; his allegations of unlawful collusion between federal and state authorities are likewise without merit for the same reasons. *See United States v. Mearis*, 36 F.4th 649, 654 (5th Cir. 2022) (holding, in context of alleged speedy trial violations, that communications between federal and state authorities about the defendant's state and federal cases were not evidence of impermissible collusion where "the state had a legitimate and independent reason to detain [the defendant] and was not holding him primarily as a ruse for the federal government's eventual arrest.").  Because Movant was in the primary custody of the State of Georgia for the time period of which he complains, his claims are without merit to the extent they rely on his alleged federal custody at the time of his initial arrest.

[11] Movant alleges that he "missed his [October 2014] initial appearance date in the Northern District of Texas and *ex parte* communications continued between the Government and non-recused Judge Boyle."  (No. 3:20-CV-640-L-BH, doc. 32 at 3,; *see also id.*, doc. 32 at 10.)  The docket does not show that any hearing took place on the originally scheduled initial appearance date of October 6, 2014.  Nor does Movant provide any evidence or facts beyond conclusory allegations to show that the initial appearance hearing took place in his absence, or that any unlawful *ex parte* communications occurred.  His unsupported allegations are therefore insufficient to show that he is entitled to § 2255 relief on this basis.

Amendment right to counsel.).  Movant's first, third, and fifth grounds should also be denied on this basis.[12]

## VI.    JUDICIAL BIAS

In his second ground, Movant contends that United States District Court Judges Boyle and Lindsay were biased and impartial.  (*See* No. 3:20-CV-640-L-BH, doc. 32 at 9.)

### A.    Judge Boyle

Movant argues that "bias by Judge Boyle was clearly displayed in a prior civil proceeding (Securities and Exchange Commission v. Giant Petroleum, et al) in which I should have never been a defendant."  (No. 3:20-CV-640-L-BH, doc. 2 at 45.)   He claims "[t]there was much animosity in the SEC case," and that "Judge Boyle desired to punish me in this case because no criminal charges, correctly, had been pursued related to the alleged in the SEC case."  (*Id.*)  Movant argues that Judge Boyle's *sua sponte* recusal in the underlying criminal case was "evidence of this bias," and "attests [that] she could not sit unbiased in this case."  (*Id.*)

After Movant pled guilty and before sentencing, Judge Boyle recused herself *sua sponte*, without explanation, in accordance with the standard practice.  *See Hill v. Schilling*, 593 F. App'x 330, 334 (5th Cir. 2014) ("[T]his court has recognized. . . that when a judge recuses [herself], the standard practice is *not* to give reasons.").   Movant offers only speculation and conclusory allegations as to the reasons for Judge Boyle's *sua sponte* recusal and corresponding bias or impartiality.  Such allegations are insufficient to merit relief under § 2255.  *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("'[M]ere conclusory allegations on a critical issue are

---

[12] Movant also alleges that "Fed. R. Crim. P. Rule 6 was violated when no arrest warrant was issued upon return of the indictment as commanded by the Rule."  (No. 3:20-CV-640-L-BH, doc. 32 at 10.)  Rule 6 sets forth procedures relating to the grand jury.  *See* Fed. R. Crim. P. 6.  Because Movant has not identified any provision in Rule 6 commanding the issuance of an arrest warrant upon the return of an indictment, and because a federal arrest warrant was issued after an indictment was returned in the underlying criminal case, his claim is without merit and entitles him to no § 2255 relief.  (*See* docs. 5, 8, 10.)

insufficient to raise a constitutional issue.'"); *Ross*, 694 F.2d at 1011. Accordingly, the claim should be denied.

**B.**    **Judge Lindsay**

Movant appears to reassert the arguments for recusal raised in his motion for disqualification of Judge Lindsay in this habeas action, i.e., that in his prior employment, he allegedly worked with an attorney related to a victim in a fraud case in 2008. (*See* No. 3:20-CV-640-L-BH, docs. 17-18; *id.*, doc. 32 at 9.) He also appears to contend that Judge Lindsay was biased or not impartial based on his adverse rulings in the underlying criminal case. (*See id.*, doc. 32 at 19.)

As discussed in the Court's order denying Movant's motion to disqualify, a judge is required to stand recused "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "As the goal of § 455(a) 'is to exact the appearance of impartiality,' recusal may be mandated even though no actual partiality exists." *United States v. Avilez-Reyes*, 160 F.3d 258, 259 (5th Cir. 1998) (quoting *Hall v. Small Business Admin.*, 695 F.2d 175, 178 (5th Cir. 1983)). To merit recusal, a movant "must show that, if a reasonable man knew of all the circumstances, he would harbor doubts about the judge's impartiality." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1165 (5th Cir. 1982). Adverse rulings do not render the judge biased, however. *Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . [T]hey . . . can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994).

Here, Movant has failed to show any evidence beyond the district judge's adverse rulings

21

in the underlying criminal case to support his claim, and he has failed to provide any relevant, extrajudicial information or evidence that would cause a reasonable person, knowing all the circumstances, to question the impartiality of Judge Lindsay in the underlying criminal case. Accordingly, he has not shown that he is entitled to relief under § 2255 on this claim, and the claim should be denied.

## VII.    INEFFECTIVE ASSISTANCE OF COUNSEL

In each of his grounds for relief, Movant contends that trial counsel, appellate counsel, or both rendered ineffective assistance.  (*See* No. 3:20-CV-640-L-BH, doc. 31 at 7-8.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI.  It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Lucey*, 469 U.S. at 396. Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, the movant must show a reasonable probability that but for counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and internal citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

A.    __Breach of Plea Agreement__

In his fourth ground, Movant contends that "[f]or counsel (Plea, Sentence, Appellate) to not have argued this [breach of plea agreement] and/or to have improperly conceded the matter was ineffective assistance." (No. 3:20-CV-640-L-BH, doc. 32 at 12.)   He also appears to argue that based on an alleged breach of plea agreement, it was deficient performance "for counsel (Plea, Sentence) to not have argued withdrawal of the guilty plea." (*Id.*, doc. 32 at 12-13.)  He claims that "[i]f not for counsel's deficient performance, there is more than a reasonable probability that the outcome of the proceedings would have been different." (*Id.*, doc. 32 at 13.)

As discussed, the record shows that there was no plea agreement between the Government and Movant in the underlying criminal case, and he has failed to show that his alleged understanding to the contrary was reasonable given the record. (*See* doc. 28 at 1,8; doc. 32-1 at ¶ 27; doc. 36-1 at 1-2; doc. 94 at 3, 6-7.)  Because there was no plea agreement, trial counsel did not render deficient performance by failing to make a futile or meritless argument. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (holding that counsel is not deficient for failing to raise a meritless argument); *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").   Nor was appellate counsel's performance deficient for failing to raise meritless argument on appeal. *See Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal).  Additionally, Movant's conclusory allegations of prejudice are insufficient to show a reasonable probability that the result of the proceedings would have been different but for counsel's alleged deficiency. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Auvenshine v. Davis*, No. 4:17-CV-294-Y, 2018 WL 2064704,

at *4 (N.D. Tex. May 3, 2018) ("Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments.") (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)).

Movant is not entitled to relief on this claim, and it should be denied.

## B.    Pre-Plea Claims

In his first, third, and fifth grounds for relief, Movant contends that his trial counsel and appellate counsel rendered ineffective assistance by failing to challenge violations of his Fourth Amendment rights, Rules 5 and 6 of the Federal Rules of Criminal Procedure, his Sixth Amendment right to counsel at critical stages of the proceedings, and his speedy trial rights. (*See* No. 3:20-CV-640-L-BH, doc. 31 at 7; *id.*, doc. 32 at 3, 8, 10, 13-16.)

As discussed, Movant waived his pre-plea claims unrelated to the guilty plea when he knowingly and voluntarily pled guilty to Counts One and Two. Any ineffective assistance claim based on his pre-plea claims was also waived. *See Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (noting that non-jurisdictional defect waiver by a guilty plea also "includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea") (internal citations and emphasis omitted); *United States v. Valdez,* No. 06–60074–08, 2013 WL 696914, at *15 (W.D. La. Feb. 4, 2013) (stating that the petitioner's ineffective assistance claim on the speedy trial issue was foreclosed by his knowing and voluntary guilty plea). Even if his ineffective assistance of counsel claims based on those claims were not also waived, because the underlying claims are without merit for the reasons previously discussed, Movant has failed to show that counsel was deficient for failing to raise meritless arguments, and he has failed to show a reasonable probability that the result of the proceedings would have been different, or that he would have prevailed on appeal, had counsel

raised the asserted arguments.  *See Miller*, 200 F.3d at 282; *Kimler*, 167 F.3d at 893; *Phillips*, 210 F.3d at 348.  He is not entitled to relief on these grounds, and they should be denied.

## C.     <u>Sentence Exposure</u>

In his sixth ground, Movant contends that his first trial counsel "was ineffective for advising [Movant] to plead guilty[.]"  (No. 3:20-CV-640-L-BH, doc. 32 at 16.)  He argues that "[i]f [he] had known the guidelines would not recommend application of §§ 1B1.2(c) and 5G1.3(b), then [he] would not have plead [sic] guilty as the evidence and record show that [he] relied upon this advice and, therefore, forfeited an entire judicial proceeding."  (*Id.*)  He claims that, "[w]ith a fully consecutive sentence as a possibility under the guidelines, the small difference made by acceptance of responsibility would have made no difference in [Movant's] determination ... particularly [ ] if [Movant] had known, pre-plea, that he also faced a potential enhancement for a 'firearm' that never existed."  (*Id.*)

"'[T]he negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel.'"  *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).  "'When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice.'"  *Id.* (quoting *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012)).

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland.*  When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

*United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004) (citations and internal quotation marks omitted).  A significant miscalculation between counsel's erroneous sentence estimate and the actual sentencing range can constitute deficient performance.  *See id.* at 437 (finding that counsel was deficient for advising his client that he faced only 6 to 12 months' imprisonment if convicted based on his misunderstanding of the guidelines, when he actually faced a range of 70 to 87 months); *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (stating that "[a]n attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial[,]" and remanding for determination of whether alleged misrepresentation was actually made).

Assuming for purposes of this motion only that counsel rendered deficient performance in representing how the guidelines would apply in his case, as alleged, deficient performance alone is insufficient to establish relief under § 2255.  *Strickland* also requires a showing of resulting prejudice.  When a movant

> adduce[s] no proof that he was promised or assured of a specific sentence, but, rather, that counsel gave him his "best estimate" of what sentence might be given if he pled guilty . . . [and when] [t]he plea agreement and the record of the change of plea hearing are replete with references to the fact that the District Court would make the determinations with respect to his sentence under the sentencing guidelines, that the District Court could decline to follow recommendations, and that no promises had been made with respect to the sentence that the District Court would impose[,]

the district court properly denies relief for lack of prejudice.  *United States v. Ritter*, 93 F. App'x 402, 404-05 (3d Cir. 2004); *see also United States v. Mackay*, Nos. 3:97CR0208T(01), 3:04-CV-0413-D, 2007 WL 700895, at *26-27 (N.D. Tex. Mar. 6, 2007); *United States v. Collins*, No. 3:08-cv-606-WHB, 2009 WL 910842, at *6 (S.D. Miss. Apr. 1, 2009) (finding the movant failed to establish prejudice for counsel's failure to warn him about potential enhancements under the

sentencing guidelines where the Court properly advised him of statutory maximum term of imprisonment).

Here, as discussed, Movant was advised both through the plea document and by the Court in person that by pleading guilty, he was subjecting himself to a statutory maximum period of imprisonment of 20 years on each count, for a total aggregate sentence of up to 40 years' imprisonment. (*See* doc. 28 at 3; doc. 94 at 10-12.) He also stated in the plea document that he had thoroughly reviewed and discussed with counsel the federal sentencing guidelines, how they might apply to his case, and the potential guideline range, and that he understood the discussions were about potential punishments, and not a guarantee of what punishment he would receive. (*See* doc. 28 at 7 & n.10.) He testified under oath at his re-arraignment that he had reviewed the plea document thoroughly with counsel, and he fully understood and agreed to it. (*See* doc. 94 at 13.) He swore in open court that no one had made him any oral or written promise that had induced or encouraged him to plead guilty, and that no one pressured, threatened, or intimidated him into pleading guilty. (*See id.* at 7-8.) He also affirmed in his plea document and at the re-arraignment that he understood his sentence would be imposed after the Court's consideration of the non-binding sentencing guidelines and § 3553 factors, and that it alone would determine his sentence.[13] (*See id.* at 11-12; doc. 28 at 3-4.)

---

[13] The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that his attorney made alleged promises to him despite making inconsistent representations in court when entering his plea. A movant is entitled to an evidentiary hearing if he presents evidence of: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir.1998) (citing *Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir.1989)). A movant must produce independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties. *Id.* When the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in light of other evidence in the record," however, the Court may dispense with his allegations without an evidentiary hearing. *Id.* Here, Movant has not provided evidence of the specific terms of any alleged promise, i.e., specifically where and when counsel made the promise that allegedly caused him to plead guilty, and he has not identified any eyewitness to the promise. Nor has he provided any independent indicia of the merit of any alleged promise. To the extent Movant's § 2255 motion may be liberally construed as arguing that counsel promised he would receive a specific sentence, he has not demonstrated he is entitled to an evidentiary hearing or to relief on this basis.

Regardless of what his counsel told him about the application of the sentencing guidelines, Movant cannot show prejudice under *Strickland* because his plea document and responses under oath to the Court's questions show that he was clearly informed about and understood his sentence exposure, as well as how the guidelines might be applied if he pled guilty.  Movant is not entitled to § 2255 relief on this ground, and the claim should be denied.

**D.    Sentencing Guidelines**

In his seventh through twelfth grounds for relief, Movant contends that trial counsel, appellate counsel, or both rendered ineffective assistance in connection with the Court's application of various sentencing guidelines.  (*See* No. 3:20-CV-640-L-BH, doc. 31 at 7; *id.*, doc. 32 at 17-20.)

**1.   U.S.S.G. § 4A1.2**

In his seventh ground, Movant contends that both of his trial attorneys and his appellate counsel were ineffective because they failed to object to the "[m]isapplication of U.S.S.G. § 4A1.2 for including Georgia federal bank robbery in criminal history."  (No. 3:20-CV-640-L-BH, doc. 32 at 17.)  He claims that his first trial counsel "was ineffective for not objecting to the PSR on these grounds[,]" his second trial counsel "was likewise ineffective for failure to object to the PSR on this ground as well as failing to object at sentencing on procedural and reasonableness grounds[,]" and appellate counsel "was ineffective for not, at least, submitting this issue under plain error review."  (*Id.*)  Aside from these general allegations and citing generally to "[p]rior submitted amendment timely-filed for this full argument.  Possibly (ECF Doc. 18) or (ECF Doc. 21)[,]" Movant does not otherwise address or develop this argument in his memorandum in support or reply.[14]

---

[14] Neither docket entry cited by Movant is an amendment to his § 2255 motion, and both were received prior to his

Movant offers only conclusory allegations of ineffective assistance of trial and appellate counsel, which are insufficient to warrant § 2255 relief.  *See Miller*, 200 F.3d at 282.  Movant's allegation that § 4A1.2 was misapplied in connection with the Georgia Bank Robbery is also without merit.  Under U.S.S.G. § 4A1.1(a), three criminal history points are added "for each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a).  A "prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense."  U.S.S.G. § 4A1.2(a)(1).  The commentary to § 4A1.2.(a)(1) clarifies that a "sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense."  U.S.S.G. § 4A1.2(a)(1), cmt. 1.

Here, Movant was assigned three criminal history points based on his May 5, 2015 convictions for the Georgia Bank Robbery; he was sentenced to over one year of imprisonment in five of the six charges on which he was convicted.  (*See* doc. 37-1 at ¶ 65.) The Georgia Bank Robbery was determined to not be part of the charged offenses.  (*See id.* at ¶ 109; doc. 100 at 93, 96-97.)  Because Movant received sentences of imprisonment exceeding one year and one day on five of his six Georgia Bank Robbery offenses, those sentences were imposed after he committed the charged offenses in the underlying criminal case but before he was sentenced, and they were not part of the charged offenses, these Georgia Bank Robbery sentences fall squarely within the definition of a prior sentence under § 4A1.2(a)(1) and its commentary.  Movant's allegations are without merit.

Because counsel was not deficient for failing to raise a meritless argument, Movant has

---

final amended § 2255 motion, in which he was ordered to set forth all of his grounds for relief whether new or previously asserted, and brief in support.  (*See* No. 3:20-CV-640-L-BH, docs. 18, 21.)

failed to satisfy the first *Strickland* prong.  *See Kimler*, 167 F.3d at 893; *Sones*, 61 F.3d at n.5.

Additionally, his conclusory allegations of prejudice are insufficient to satisfy his burden under

*Strickland*.  *See Miller*, 200 F.3d at 282.  He is not entitled to § 2255 relief on this claim, and it

should be denied.

### 2.  Firearm Enhancement

In his eighth ground, Movant contends that his second trial counsel and appellate counsel

were ineffective in connection with challenging the six-level firearm enhancement applied to

Count One.  (*See* No. 3:20-CV-640-L-BH, doc. 32 at 17.)  He argues that the Court "relied upon

[its] incorrect memory of Movant's prior conviction 'involving false statements.'"  (*Id.*)  He claims

that given the evidence presented by the Government in support of the enhancement, and the fact

that he provided the only live cross-examined testimony on the issue, his second trial counsel "was

ineffective for not objecting to [the Court's] erroneous reliance on [its] incorrect memory of

Movant's prior conviction where Movant was found credible in his cooperation with the Gov't

[sic]."  (*Id.*)  He claims that appellate counsel "was ineffective for, although attempting to argue

the issue, he did not reference Movant's testimony at all nor [the Court's] reliance on [its]

inaccurate memory to impeach [Movant's] credibility."  (*Id.*)

At sentencing, the Court heard arguments and evidence that a bank teller told investigators,

on two separate occasions separated by three years' time, that Movant had pointed a handgun

toward or at him during the bank robbery charged in Count One.  (*See* doc. 51-1 at 2; doc. 100 at

10-18, 24-27.)   The Court also heard Movant's testimony that he did not have a handgun at any

of the bank robberies he committed, including the one charged inCount One.  (*See* doc. 100 at 18-

24.)  After his testimony, the Court stated:

> Once again, the Court would state that [Movant] has more to lose in this situation,
> and also, frankly speaking, there is a question as to his credibility.  If this were a

> trial, the conviction in 2008 would certainly be within the period allowed by Rule
> 609 of the Federal Rules of Evidence.  The conviction in 2008, I believe January of
> 2008, was a crime involving dishonesty and false statement, and in those situations
> the Court does not have to make the determination whether or not the probative
> value outweighs the prejudicial impact.  But the point the Court is making, this still
> bears on [Movant's] credibility; therefore, the Court is going to hold there was a
> small handgun.

(doc. 100 at 29.)  Movant's January 2008 conviction was for exceeding authorized access to a

computer and aiding and abetting in violation of 18 U.S.C. §§ 1030(a)(2)(C) and 2.  *See United*

*States v. Plunkett*, No. 3:07-CR-120-L(1), doc. 120 (N.D. Tex. Jan. 24, 2008).  In pleading guilty,

Movant, who was the CEO and President of an oil services company, admitted that he gave one of

his employees $6,000 to purchase a competitor's investor list from an employee of that competitor

because the list would be economically valuable.  *See id.* at doc. 113 (N.D. Tex. Sept. 27, 2007).

The competitor's employee downloaded the investor list from a protected computer without the

authorization or knowledge of the competitor's officials.  *See id.*  Movant admitted that he

downloaded the investor list onto his computer and sent anonymous emails to the competitor

concerning the list, and that he did not have permission to acquire or read it.  *See id*.

Because Movant's admissions in his 2008 conviction show that his offense involved

dishonesty and false statements by virtue of his actions to obtain a business competitor's investor

list that he knew he did not have permission to have, and to anonymously email the competitor

about the list for commercial advantage or financial gain, his allegations that the Court's

recollections about his prior conviction were incorrect is without merit. "At sentencing, the district

court 'may consider relevant information without regard to its admissibility under the rules of

evidence applicable at trial, provided that the information has sufficient indicia of reliability to

support its probable accuracy.'" *United States v. West*, 58 F.3d 133, 138 (5th Cir. 1998).  Movant

has not shown that the Court's consideration of his prior criminal conduct was not supported by sufficient indicia of reliability given his guilty and admitted conduct in the 2008 case.

Because trial and appellate counsel are not deficient for failing to raise meritless arguments, Movant has failed to satisfy the first *Strickland* prong.  *See Kimler*, 167 F.3d at 893; *Sones*, 61 F.3d at n.5; *Phillips*, 210 F.3d at 348.  He also has failed to demonstrate resulting prejudice under *Strickland*.  He is not entitled to relief on this claim, and it should be denied.[15]

### 3.  U.S.S.G. §§ 1B1.2(c) and 1B1.3

In his ninth ground, Movant contends that his second trial counsel and appellate counsel were ineffective for failing to challenge the alleged misapplication of U.S.S.G. §§ 1B1.2(c) and 1B1.3 in connection with the Georgia Bank Robbery.  (*See* No. 3:20-CV-640-L-BH, doc. 31 at 7; *id.*, doc. 32 at 18.)  He argues that "§ 1B1.2(c) should have been applied to the stipulated uncharged conduct related to the Georgia federal bank robbery, and, thereby §1B1.3 should have treated that conduct as relevant conduct to the instant offense."  (*Id.*, doc. 32 at 18.)  He claims that his "stipulation was made pursuant to an agreement under § 1B1.2(c) which does not specify such an explicit agreement" as required by § 1B1.2(a), and "[t]herefore, this stipulated conduct should have been treated as relevant conduct under the Guidelines."  (*Id.*)

Section 1B1.2(c) provides that "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offenses."  U.S.S.G. § 1B1.2(c).  As discussed, the record shows that there was no plea agreement, written or made orally on the record, between the parties relating to the Georgia Bank Robbery.  Movant's

---

[15] To the extent Movant's eighth ground can be liberally construed to raise a claim of ineffective assistance of counsel based on a failure to challenge the evidence supporting the firearm enhancement, he challenged the sufficiency of the evidence on appeal, and his claim was rejected.  *See Plunkett*, 749 F. App'x at 307.  It is therefore barred from collateral review and should be denied.  *See, e.g.*, *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997).

conclusory allegation that the stipulation in his plea document "was made pursuant to an agreement under § 1B1.2(c)" is unsupported by the record, and his argument that § 1B1.2(c) "does not specify such an explicit agreement" as does § 1B1.2(a) is without merit.[16]  *See United States v. Harrier*, 229 F. App'x 299, 300-01 (5th Cir. 2007) ("The plain language of § 1B1.2(c) makes clear that this provision does not apply where there is no plea agreement 'written or made orally on the record.'").  To the extent his claim that § 1B1.3 should have treated the Georgia Bank Robbery as relevant conduct relies on his contention that § 1B1.2(c) was misapplied, it is also without merit.

Because conclusory allegations and a failure to raise meritless arguments are insufficient to show that any of his counsel's performance was deficient, Movant has failed to satisfy the first prong of *Strickland*.  *See Kimler*, 167 F.3d at 893; *Koch*, 907 F.3d at 530; *Phillips*, 210 F.3d at 348.  Additionally, he has failed to satisfy his burden under *Strickland* to show a reasonable probability that the result of the proceedings would have been different, or his appeal would have been successful, but for counsel's alleged deficiencies.  Movant is not entitled to § 2255 relief on this claim, and it should be denied.

### 4.  U.S.S.G. § 1B1.3

In his twelfth ground, Movant contends that counsel was ineffective for failing to challenge the "[m]isapplication of U.S.S.G. § 1B.3[,]" though on a different basis than his ninth ground. (No. 3:20-CV-640-L-BH, doc. 32 at 19; *see also id.*, doc. 31 at 7.)  He contends that both of his trial attorneys were ineffective based on the "failure to consider other provision under the Guideline by which Georgia federal bank robbery would be considered relevant conduct."  (*Id.*, doc. 32 at 19-20.)  He argues that his first counsel was ineffective "for not arguing and objecting

---

[16] Section 1B1.2(a) includes the same language as § 1B1.2(c) for the determining the applicable offense guideline section where there is "a plea agreement (written or made orally on the record) containing a stipulation[.]"  *Compare* U.S.S.G. § 1B1.2(a), *with* U.S.S.G. § 1B1.2(c).

on this ground subsequent to $2^{\underline{ND}}$ addendum of PSR," and that his second counsel "was ineffective for not objecting to the PSR on this ground as well as for not objecting and arguing this issue at sentencing." (*Id.*, doc. 32 at 20.) He appears to claim that the Georgia Bank Robbery constituted relevant conduct under § 1B1.3(a)(2). (*See id.*)

Under § 1B1.3(a)(2), relevant conduct for purposes of determining the guideline sentencing range includes, "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The applicable guideline for Movant's § 2113(a) charged offenses is § 2B3.1, the offenses under which are specifically excluded from the grouping requirement of § 3D1.2(d). (*See* doc. 32-1 at ¶ 28); U.S.S.G. 3D1.2(d). Because § 1B1.3(a)(2) applies "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," and Movant's charged offenses are specifically excluded from the operation of § 3D1.2(d), § 1B1.3(a)(2) is inapplicable to Movant's underlying criminal case, and his argument is without merit.

Counsel is not deficient for failing to raise a futile or meritless argument. *See Kimler*, 167 F.3d at 893; *Sones*, 61 F.3d at n.5. Further, Movant has not shown a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficiency. He therefore has failed to satisfy both *Strickland* prongs and is not entitled to relief on this claim, and it should be denied.

### 5. Dallas Bank Robbery

In his tenth ground, Movant contends that his trial attorneys and appellate counsel were ineffective for failing to argue "[m]iscalculation of Guidelines range for inclusion of unindicted

March 24, 2014" Dallas Bank Robbery. (No. 3:20-CV-640-L-BH, doc. 32 at 18.) He argues that it "should not have impacted the Guidelines." (*Id.*) He alleges that his first trial counsel "was ineffective for not objecting to its inclusion in the PSR Guidelines calculation," that his second trial counsel "was ineffective for not making an objection to the PSR on this ground as he was aware," and that appellate counsel "could have argued plain error [but] [h]e did not." (*Id.*)

The record shows that Movant agreed that he committed the Dallas Bank Robbery, that the Government offered to not supersede the indictment to charge the robbery in the underlying criminal case if Movant agreed that the conduct should be included as relevant conduct for sentencing purposes, and that Movant accepted the offer. (*See* doc. 46 at 3; doc. 84; doc. 100 at 7.) At the sentencing hearing, Movant admitted to committing the Dallas Bank Robbery and confirmed under oath that it had been stipulated to by the parties. (*See* doc. 100 at 20.) Because the parties agreed that the Dallas Bank Robbery would be included as relevant conduct for purposes of sentencing, Movant has failed to show that his trial attorneys were ineffective for failing to challenge a stipulation which had been agreed upon by the parties on the record. He also has not shown resulting prejudice under *Strickland* based on trial counsel's alleged deficiencies, nor has he shown a reasonable probability of success on appeal had his appellate counsel challenged the inclusion of the Dallas Bank Robbery in determining the applicable guideline range of imprisonment. Movant is not entitled to § 2255 relief on this claim, and it should be denied.

### 6. U.S.S.G. § 5G1.3

In his eleventh ground, Movant contends that his second trial counsel was ineffective for failing to object to, and that appellate counsel was ineffective for failing to raise an argument regarding, the Court's alleged procedural errors in its application of U.S.S.G. § 5G1.3 and consideration of the § 3553(a) sentencing factors. (*See* No. 3:20-CV-640-L-BH, doc. 32 at 19.)

He argues that the Court committed "procedural error in not considering, nor even calculating, what the Guidelines under 5G1.3, and its related commentary, recommended in relation to the treatment of Movants [sic] undischarged prison sentence for the Georgia federal bank robbery." (*Id.*) He also argues that the "Court has a duty to also consider and apply the relevant portions of the Guidelines in conjunction with the 3553 factors ... [and the Court] did not do this following the correct procedural steps." (*Id.*)

Section 5G1.3 addresses the imposition of a sentence on a defendant who is subject to an undischarged term of imprisonment. *See* U.S.S.G. § 5G1.3. At sentencing, the Court heard arguments about whether the Georgia Bank Robbery was relevant conduct under the guidelines so as to direct that Movant's federal sentences be imposed to run concurrently with his undischarged sentences for that robbery, and about how his federal sentences should be imposed in relation to those undischarged sentences. (*See* doc. 100 at 54-59, 67-82.) It also heard arguments about the sentencing factors under § 3353(a), and it expressly set forth the sentencing factors and stated that all would be taken into consideration before sentence was imposed. (*See id.* at 46-47; 94-96.)

Aside from unsubstantiated and conclusory allegations unsupported by the record, Movant has not shown that § 5G1.3 was misapplied, or that the Court did not properly consider it in conjunction with the § 3553(a) sentencing factors. *See Ross*, 694 F.2d at 1011. He has failed to allege or show a meritorious basis on which trial counsel or appellate counsel could have challenged the Court's application of § 5G1.3 and consideration of the § 3553(a) factors. Additionally, his conclusory allegations of prejudice are insufficient to satisfy his burden under *Strickland*. Movant has accordingly failed to satisfy both *Strickland* prongs, and his claim should be denied.[17]

---

[17] To the extent Movant's arguments rely on his claims that § 1B1.2 and § 1B1.3 were misapplied, the arguments fail because his challenges to the application of those provisions are without merit, as discussed.

E.    **Downward Departure**

In his thirteenth ground, Movant contends that his second trial counsel was ineffective for not objecting to the Court's denial of his motion for a downward departure "and arguing the issue further." (No. 3:20-CV-640-L-BH, doc. 32 at 20.) He also contends that appellate counsel "was ineffective for not raising this issue on appeal." (*Id.*)

Here, the record shows that Movant's second trial counsel filed a motion for a downward departure under the guidelines on the ground that a criminal history category of IV substantially overrepresented his criminal history. (*See* doc. 82.) Counsel argued the motion at sentencing, as well as the prior motion for a downward departure filed by Movant's first trial counsel; after hearing the parties' arguments, the Court denied the motion. (*See* doc. 48; doc. 100 at 39-46.)

Aside from conclusory allegations of abuse of discretion and error, Movant has not alleged what trial counsel could have further argued in support of the motion for a downward departure, or any meritorious argument that appellate counsel should have raised on appeal. *See Sones*, 61 F.3d at n.5; *Phillips*, 210 F.3d at 348. Even if he had, his claim still fails because he has not shown resulting prejudice; his conclusory allegations of prejudice are insufficient to satisfy his burden under *Strickland*. *See Miller*, 200 F.3d at 282. Accordingly, the claim should be denied.

F.    **Prejudicial Statements**

In his fourteenth ground, Movant contends that his second trial counsel was "ineffective for making prejudicial statements during the sentencing hearing." (No. 3:20-CV-640-L-BH, doc. 32 at 20.) He alleges that in response to the Court's question about what he thought would have happened if Movant had not been arrested, trial counsel stated "that he believed that my spree would have continued until some intervening event. He believed that the robberies would have continued had I not been arrested that night." (*Id.*, doc. 2 at 48.) Trial counsel "continued on,

which is not recorded in the transcript, that he believed, had I not been arrested, that I 'would have continued until either I died, was incapacitated, or killed someone else.'" (*Id.*)  He claims that trial counsel's "inflammatory and prejudicial remarks were ineffective assistance of counsel as [the Court] was highly focused on this issue in [its] contemplation of either a fully consecutive or fully concurrent sentence to the undischarged prison sentence in Georgia." (*Id.*)

Even assuming for purposes of this motion only that counsel rendered deficient performance by making the statements as alleged, Movant has not shown a reasonable probability that the result of the sentencing proceeding would have been different but for counsel's alleged deficiency.  His speculative and conclusory allegations of prejudice are insufficient to satisfy his burden under *Strickland*, and the claim should be denied.

## G.    <u>Unreasonable Sentence</u>

In his fifteenth ground, Movant contends that his second trial counsel "was ineffective for not requesting a partially-concurrent sentence and for not objecting as procedurally flawed and unreasonable a fully-consecutive one." (No. 3:20-CV-640-L-BH, doc. 32 at 21; *see also id.*, doc. 77 at 11.)

The record shows that counsel filed a pre-sentencing memorandum arguing that the Court should impose the sentence in the underlying criminal case to run concurrently with the state sentences imposed in the Georgia Bank Robbery case.  (*See* doc. 81 at 7-10.)  At sentencing, counsel argued that the federal sentence run concurrently with the Georgia Bank Robbery sentences.  (*See* doc. 100 at 57-59, 74-78.)  The Court rejected counsel's arguments and imposed a sentence that would run consecutively to the Georgia Bank Robbery sentences.  (*See id.* at 93, 96-97.)  Counsel does not appear to have specifically requested partially concurrent sentences in either his filings or at sentencing, or to further challenge the reasonableness of the consecutive

sentences imposed by the Court.

Assuming for purposes of this motion only that counsel was deficient for not specifically requesting partially concurrent sentences or further arguing against the consecutive sentences imposed by the Court, as alleged, Movant must also show prejudice under *Strickland*. District courts generally "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences . . . that have been imposed in . . . state proceedings." *Setser v. United States*, 566 U.S. 231, 236 (2012). Under U.S.S.G. § 5G1.3(d), applicable in the underlying criminal case, the Court had the discretion to impose Movant's sentence to run concurrently, partially concurrently, or consecutively to any undischarged term of imprisonment or anticipated sentence.[18] *See* U.S.S.G. § 5G1.3(d). Movant has not provided any facts or evidence to show a reasonable probability that the Court would have exercised its discretion differently, i.e., that it would have imposed a partially concurrent sentence, if not for trial counsel's alleged failure to expressly make that request. He therefore has failed to show *Strickland* prejudice, and the claim should be denied.

## H.    <u>Pre-Sentencing Plea Offer</u>

In his sixteenth ground, Movant contends that his second trial counsel "was ineffective for advising [Movant] improperly in relation to whether or not [Movant] should accept the Government's eve-of-sentencing Plea Agreement offer." (No. 3:20-CV-640-L-BH, doc. 32 at 22.) According to Movant, on the day before sentencing, counsel "informed me of the plea/sentencing

---

[18] Movant alleges that the Court "clearly could not have considered 5G1.3(d) and its commentary because under that provision and its commentary, the guidelines called for at least, a partially concurrent sentence. Because [the Court] did not order a partially concurrent sentence pursuant to the guidelines, Movant's sentence was a variance sentence requiring a more thorough explanation which would not have been supportable under 3553(a)(6)." (No. 3:20-CV-640-L-BH, doc. 77 at 11.) Section 5G1.3(d) provides that "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(d). Because § 5G1.3(d) provides for the imposition of consecutive sentences, the Court's sentence comports with § 5G1.3(d), without requiring a variance or departure from the guidelines.

offer of the Government.  He said that he had spoken with [the prosecutor] and that she offered to agree to drop the 'firearm' enhancement, to run this sentence concurrent to the Georgia sentence, and to a guidelines range of 92-114 months.  [Counsel] said that he believed it would be an '11(c)(1)(c) [sic] agreement.'"  (*Id.*, doc. 33 at 2.)  Movant further contends that counsel "said that he did not think that the Government was offering anything that we would not get anyway at sentencing.  He said that 'It is not a deal.'"  (*Id.*)

The Government argues that "the record conclusively shows that no such offer existed," and that it "defies logic and procedure that the government would have extended another 'plea agreement offer' on the eve of sentencing."  (*Id.*, doc. 69 at 42-43.)  The record shows that two days before sentencing, the parties filed a joint statement setting forth the outstanding issues remaining between them for sentencing, including the application of the firearms enhancement and whether Movant's federal sentence should run concurrently with his sentences for the Georgia Bank Robbery.  (*See* doc. 84.)  Prior to and at sentencing, the Government argued in support of the firearm enhancement and requested a guideline sentence that would run consecutively to the Georgia Bank Robbery sentences.  (*See* doc. 73; doc. 100 at 17-18, 21-23, 26, 73.)

Even assuming for purposes of this motion only that despite its consistent opposition to the same issues prior to and at sentencing, and despite the absence of any evidence in the record beyond Movant's *post-hoc* statements that a plea offer was extended, the Government offered on the eve of sentencing to "drop the 'firearm' enhancement, to run this sentence concurrent to the Georgia sentence, and to a Guidelines range of 92-114 months" in a contemplated Rule 11(c)(1)(C) agreement, as Movant alleges he was told by trial counsel, and that counsel was deficient for advising Movant to reject the offer, *Strickland* also requires a showing of resulting prejudice.  To demonstrate prejudice when a plea agreement was rejected based on ineffective advice, a movant

41

must show a reasonable probability that but for the deficient advice: (1) he would have accepted the plea offer before it was withdrawn by the prosecution; (2) the court would have accepted the terms of the offer; and (3) the conviction or sentence, or both, under the terms of the plea offer would have been less severe than the judgment and sentence that were actually imposed. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Movant has failed to show a reasonable probability that the Court would have accepted the terms of the alleged Rule 11(c)(1)(C) plea offer where Movant had already entered a guilty plea on the charged offenses that had been accepted, and where the guilty plea had not been withdrawn. *See Rivas-Lopez*, 678 F.3d at 359 ("there is a burden on [the movant] to show that there was a reasonable probability that the prosecution would not have withdrawn the plea offer and that the court would have accepted its terms."). Because Movant has failed to carry his burden to show *Strickland* prejudice, he is not entitled to relief on this claim, and it should be denied.

## I.    *Napue* **Violations**

In his reply, Movant contends that his appellate counsel was ineffective for failing to raise an argument on direct appeal that the Government violated *Napue v. Illinois*, 360 U.S. 264 (1959). (*See* No. 3:20-CV-640-L-BH, doc. 77 at 3-4, 10-11.) He argues that the Government violated *Napue* "at sentencing in this case when [the prosecutor] offered her testimony, although not under oath, to the Court that Movant was not arrested upon the federal warrant when she knew that statement to be false and it was material to Movant's punishment in this case." (*Id.*, doc. 77 at 11.)

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *See Napue*, 360 U.S. at 269. To prevail on a claim that his constitutional

rights were violated by the presentation of false testimony, a movant must establish that: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) the testimony was material. *Id.* at 271; *see also United States v. Oti*, 872 F.3d 678, 696 (5th Cir. 2017).

Even assuming *Napue* applies in the context of guilty pleas, Movant has failed to satisfy his burden. The record shows that the Government's prosecutor did not testify at Movant's sentencing hearing; she presented argument addressing the chronology of Movant's arrest. (*See* doc. 100 at 68.) She argued that "in [her] mind, he clearly wasn't [arrested on a federal arrest warrant on April 15, 2014]," and that she thought that an arrest on a warrant other than the federal warrant was "absolutely probably and most probably what happened." (*Id.*) Movant has provided no authority to support his position that arguments and statements by counsel in these circumstances constitute testimony under *Napue*. He also has failed to show that the prosecutor's opinion statements were false, and that the Government knew they were false.[19] Nor has he shown that the statements were material because, as discussed, he waived his pre-plea claims stemming from his arrest when he entered a knowing and voluntary guilty plea.

Because Movant has failed to satisfy all the prongs to establish a *Napue* violation, he has not shown that appellate counsel was deficient for failing to raise a meritless claim under *Napue* on appeal. *See Phillips*, 210 F.3d at 348. Moreover, Movant has failed to show prejudice under *Strickland*. *See Auvenshine*, 2018 WL 2064704 at *4. He is not entitled to § 2255 relief on this claim, and it should be denied.

## VIII.  MISAPPLICATION OF THE SENTENCING GUIDELINES

In his seventh through twelfth grounds for relief, Movant contends that the trial court misapplied various sentencing guidelines. (*See* No. 3:20-CV-640-L-BH, doc. 31 at 7; *id.*, doc. 32

---

[19] As discussed, Movant's arguments relating to the nature of his April 15, 2014 arrest are based on a theory constructed from conclusory allegations, conjecture, and speculation, none of which is sufficient to merit § 2255 relief.

at 17-20.)  He claims that he did not raise these issues on direct appeal due to the ineffective assistance of counsel.  (*See id.*, doc. 31 at 11.)  The Government contends that these claims are procedurally barred because he failed to raise them on direct appeal, and that they are non-cognizable.  (*See id.*, doc. 69 at 32-33.)

As discussed, neither his trial nor appellate counsel was ineffective for failing to challenge the Court's application of the various sentencing guidelines challenged in the § 2255 motion. Movant has therefore failed to show cause and prejudice to overcome his procedural default, and the claims are procedurally barred.  Even assuming for purposes of this motion only that his challenges under the sentencing guidelines are not procedurally barred, however, it is well-established that the technical application of the sentencing guidelines is not subject to collateral review in a § 2255 motion.  *See, e.g., United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996).  "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed.  Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Williamson*, 183 F.3d at 462.  Movant's claims regarding the trial court's alleged errors in applying the sentencing guidelines are not cognizable under § 2255, warrant no relief, and should be denied.

## IX.    DOWNWARD DEPARTURE

In his thirteenth ground, Movant contends that the Court's "denial of Motion for Downward Departure for overrepresentation of criminal history was an abuse of discretion and error.  (No. 3:20-CV-640-L-BH, doc. 32 at 20.)  He cites an amendment to a prior version of his § 2255 motion, not to the final amended § 2255 motion in which he was ordered to include all arguments, whether new or previously asserted.  (*See id.* (citing *id.*, doc. 10 at ¶¶1, 5-8, pp. 3-4).)

Even if the Court liberally construed his motion as incorporating the prior filing, his conclusory allegations are insufficient to warrant relief under § 2255 on this claim.  *See Koch*, 907 F.2d at 530.  Further, to the extent he seeks to support his claim by relying on his previously asserted argument that his criminal history was overrepresented because it improperly included the Georgia Bank Robbery sentences in its calculations when they did not constitute a "prior sentence" under the guidelines, his argument is without merit.  As discussed, Movant's Georgia Bank Robbery sentences exceeding one year of imprisonment were not related or relevant conduct to the charged offenses for purposes of sentencing, and therefore fell squarely within the definition of a "prior sentence" under the guidelines.  Movant has failed to show that he is entitled to § 2255 relief on this claim, and it should be denied.

## X.    UNREASONABLE SENTENCE

In his fifteenth ground, Movant contends that the Court's "sentence was unreasonable in relation to the 18 U.S.C. § 3553 factors."  (No. 3:20-CV-640-L-BH, doc. 32 at 21.)  He argues that the Court "did not consider § 3553(a)(6), sentencing disparities, at all particularly in the application of U.S.S.G. § 5G1.3."  (*Id.*)

Here, the record shows that, in determining Movant's sentence, the Court expressly stated that "[i]n addition to considering the advisory guidelines, a sentencing court must consider certain statutory factors.  These statutory factors are set forth in Title 18 United States Code Section 3553(a)(1) through (7)."  (doc. 100 at 46.)  It further stated that it "will take all of these factors into consideration before it imposes sentence against [Movant]."  (*Id.* at 47.)  Before imposing sentence, the Court "considered the statutory factors that it read into the record," and "also considered the advisory guidelines which it is required to do."  (*Id.* at 93.)  Determining "that a guidelines sentence would be fair, just, and reasonable under the totality of the circumstances[,]"

the Court imposed concurrent sentences of 114 months' imprisonment on Counts One and Two, which was at the low end of the applicable guidelines range of 110-137 months.  (*Id.* at 94.) Its statement of reasons for the sentence stated: "In determining [Movant's] sentence, the court considered the advisory guidelines [ ], as well as the statutory factors listed in 18 U.S.C. Section 3553(a)."  (doc. 87 at 4.)  The record accordingly demonstrates that the Court considered and applied the § 3553(a) sentencing factors in determining Movant's sentence.

The Fifth Circuit has held that "a sentence within the Guidelines range is presumptively reasonable, and this presumption is rebutted only if the [movant] demonstrates that the sentence does not account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing sentencing factors."  *United States v. Hernandez*, 876 F.3d 161, 166 (5th Cir. 2017).  "When the judge exercises [his] discretion to impose a sentence within the Guideline range and states for the record that [he] is doing so, little explanation is required."  *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).  Movant has not shown that the guideline range was improperly calculated, as discussed, and he has not offered any facts or evidence to rebut the presumption that his sentence was reasonable.  To the extent he claims that "[o]ther federal defendants, locally and nationally, with similar backgrounds, criminal histories, and other factors being equal, sentenced for the same number of counts in violation of 18 U.S.C. § 2113(a) after guilty plea were sentenced to far less prison time than Movant's aggregate 234-month sentence,"[20] his allegations are conclusory, unsubstantiated, and contingent on faulty assumptions and circumstances inapplicable to his criminal case.[21]  (No. 3:20-CV-640-L-BH, doc. 32 at 21.)

---

[20] Movant does not identify or provide any evidence of such defendants, either locally or nationally.

[21] Movant argues that "[i]f prosecuted in one proceeding or sentenced in a consolidated proceeding under Fed. R. Crim. P. Rule 20, Movant (or any other defendant nationally) would have been subject to a guidelines range of 100-

Additionally, Movant's conclusory and unsubstantiated allegation that "it appears [the Court] believed [it] could not order the sentences to run concurrently, either fully or partially," is refuted by the record. (*Id.*) The record shows that the Court recognized that the guidelines were advisory, and that it heard arguments regarding and considered whether to run Movant's federal sentence concurrently with his Georgia Bank Robbery sentences, thereby acknowledging its authority to impose concurrent sentences. (*See* doc. 100 at 74, 88- 93.) Movant's argument is unsupported by the record and is without merit.

Movant has not shown that § 2255 relief is warranted on this claim, and it should be denied.

## XI.    EVIDENTIARY HEARING

Movant requests an evidentiary hearing. (*See* No. 3:20-CV-640-L-BH, doc. 32 at 23; *see also id.*, doc. 77 at 11.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *Reed*, 719 F.3d at 373 (citation omitted). Movant has failed to demonstrate the existence of a factual dispute that creates a genuine issue, or to come forward with independent indicia in support of the likely merit of his claims. *See id.* He has therefore failed to demonstrate he is entitled to an evidentiary hearing.

## XII.    MOTION FOR BOND

Movant seeks to be released on bond pending determination of his § 2255 motion. (*See* No. 3:20-CV-640-L-BH, doc. 111.)

---

125 months <u>total</u>." (No. 3:20-CV-640-L-BH, doc. 32 at 21.) He premises this argument on an alternate type of proceeding than his own, the application of various sentencing guidelines that were properly not applied in his case, as discussed, and on the position that he received a 234-month aggregate sentence, presumably by combining his state sentences for the Georgia Bank Robbery with his federal sentences in the underlying criminal case.

In order to show entitlement to release pending determination of his habeas motion, a movant must "'raise[ ] substantial constitutional claims upon which he has a high probability of success,' and [he] must also show that 'extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective.'" *United States v. Poff*, No. 22-20212, 2022 WL 3335781, at *1 (5th Cir. Aug. 12, 2022) (quoting *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974)). Examples of "extraordinary circumstances" justifying release on bond pending collateral review "include the serious deterioration of the movant's health while incarcerated, short sentences for relatively minor crimes so near completion that extraordinary action is essential to make collateral review truly effective, and extraordinary delay in processing a § 2255 motion." *United States v. Stafford*, 253 F.3d 701, 2001 WL 498962, at *1 (5th Cir. 2001) (per curiam).

For the reasons discussed, Movant has not shown that § 2255 relief is warranted on any of his claims. He therefore has failed to "raise a substantial constitutional claim upon which he has a high probability of success." *Poff*, 2022 WL 3335781, at *1. Because he has not satisfied the first requirement for release on bond, the Court does not address the second requirement. Movant is not entitled to release on bond or bail pending resolution of his § 2255 motion. The *Motion for Bond Pending Ruling on § 2255 Motion*, received on September 7, 2022 (doc. 111), is **DENIED**.

## XIII.   RECOMMENDATION

The *Final Amended Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on May 18, 2020 (doc. 31) should be **DENIED** with prejudice.

**SIGNED this 3rd day of October, 2022.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE